**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EXCEDO INCORPORATED,<br>LAWRENCE CARACCIOLO, and<br>THORP REED & ARMSTRONG, LLP,<br><br>Plaintiffs,<br><br>v.<br><br>COLUMBUSNEWPORT, LLC; BLUE<br>RIDGE PARTNERS MANAGEMENT<br>CONSULTING, LLC; VICTOR MILLAR;<br>JOHN F. LAWRENCE; JAMES COREY; and<br>MICHAEL PENNEY,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)    02:  03cv1158<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER OF COURT**

March 31, 2006

Presently before the Court are the following:

•        MOTION FOR SUMMARY JUDGMENT filed by ColumbusNewport, LLC, Victor

Millar and John F. Lawrence, with brief in support (*Document Nos. 70 and 71, respectively)*;

•        OPPOSITION and MEMORANDUM OF LAW IN OPPOSITION  filed by

Plaintiffs, Excedo Incorporated, Lawrence Caracciolo, and Thorp, Reed & Armstrong LLP

(*Document Nos. 90 and 91, respectively)*; and

•        BRIEF IN REPLY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION filed by

ColumbusNewport, LLC, Victor Millar and John F. Lawrence (*Document No. 102*).

After careful review of the filings of the parties and the relevant case law, the Motion for

Summary Judgment will be denied.

**PROCEDURAL BACKGROUND**

On July 31, 2003, Plaintiffs, Excedo Incorporated ("Excedo"), Lawrence Caracciolo ("Caracciolo"), and Thorp Reed & Armstrong, LLP ("Thorp Reed"), filed a Verified Complaint in this Court in which they alleged claims of fraud, negligent misrepresentation, and promissory estoppel against Defendants ColumbusNewport, LLC ("ColumbusNewport"); Victor Millar ("Millar"), Chief Executive Officer of ColumbusNewport; and John F. Lawrence ("Lawrence"), Chief Financial Officer of ColumbusNewport (collectively referred to as the "ColumbusNewport Defendants"); Blue Ridge Partners Management Consulting, LLC ("Blue Ridge"); and the two principals of Blue Ridge, James Corey ("Corey") and Michael Penney ("Penney"). Specifically, Plaintiffs allege that the ColumbusNewport Defendants induced Plaintiffs to forego alternative investments and commit to the preparation of ColumbusNewport's proposed investment in Excedo by representing that ColumbusNewport had funding for the deal.

The ColumbusNewport Defendants have filed the instant motion for summary judgment, in which they contend that (i) Defendants Millar and Lawrence are entitled to summary judgment because the evidence is insufficient as a matter of law to impose liability upon them as individuals; (ii) none of the Plaintiffs can show reasonable reliance, which is an essential element of all their claims; (iii) Plaintiffs cannot satisfy the elements of fraud or misrepresentation against the ColumbusNewport Defendants; and (iv) Plaintiff Thorp Reed's claim for attorneys fees are invalid as a matter of law. Plaintiffs have filed their response and memorandum brief in opposition to the motion for summary judgment. The matter is ripe for disposition.

### FACTUAL BACKGROUND

The facts relevant to this discussion, and viewed in the light most favorable to Plaintiffs, are as follows.  In 2002 and 2003, Plaintiffs Caracciolo and Excedo sought to acquire two subsidiaries of Federated Investors, Inc. ("Federated") (collectively referred to as the "Business Units"), whose operations Caracciolo managed.  In or around May 2002, Excedo retained Blue Ridge to assist in its efforts to locate an equity investor to fund the acquisition.

In June 2002, Caracciolo and Penney of Blue Ridge met with Lawrence of ColumbusNewport.  At that meeting, Caracciolo explained that Federated had decided to sell the Business Units and that a $12 - $15 million equity investment would be needed to acquire the Business Units and supply working capital.   Defendant Lawrence indicated that ColumbusNewport may be interested in the transaction but that, at that time, it did not have funds for such an investment.

In July 2002, Penney informed Caracciolo that ColumbusNewport remained interested in the Excedo opportunity, but had not yet secured its funding.

In September 2002, ColumbusNewport offered a Letter of Intent for the Excedo investment, which was signed by Defendant Lawrence.  The Letter of Intent contained a contingency provision stating that its ability to obtain funds was a condition to closing.  Caracciolo rejected the Letter of Intent because he would not sign a letter of intent with any investor who lacked the funding to close the ultimate transaction.

In late November and early December 2002, negotiations commenced over a new Letter of Intent.  Caracciolo asked ColumbusNewport to remove the funding contingency.  On December 2, 2002, Defendant Lawrence faxed a revised Letter of Intent to Excedo that did not contain the

funding contingency that had appeared in the September proposal.  On December 10, 2002, Excedo and ColumbusNewport executed the Letter of Intent.  It was anticipated that the closing of the transaction would occur on or before December 31, 2002.

However, on December 30, 2002, the due diligence consultant for ColumbusNewport advised Excedo that the closing would have to be postponed to allow time for Millar to review the relevant documentation.  The closing was rescheduled for January 17, 2003.

On January 17, 2003, ColumbusNewport had counsel present in Pittsburgh for the anticipated closing.  However, on that same date, ColumbusNewport announced that it could not close because it lacked the necessary funding to close the transaction.

Over the ensuing weeks, Excedo continued to work with ColumbusNewport in the hopes that the parties could close the transaction.  In late January or early February 2003, Defendant Lawrence reported to Caracciolo that it appeared as though the funding would materialize.  Caracciolo gave ColumbusNewport a "drop dead" closing date of February 24, 2003.  That date passed, and ColumbusNewport still did not have the required funding to close the transaction.

The ColumbusNewport Defendants argue that on various occasions between December 2002 and January 2003, Caracciolo was informed that ColumbusNewport did not have the necessary funding.  Plaintiffs respond that "at no time during the negotiation of the letter of intent with ColumbusNewport or prior to the ultimately scheduled closing on January 17, 2003, did any of the Defendants disclose to Excedo, Caracciolo, Thorp Reed, or Federated the fact that ColumbusNewport did not have the funding for the transaction."  Pls' Memo. at 5-6.

Plaintiffs contend that "based upon the misrepresentations and omissions of each of the Defendants, Caracciolo believed that ColumbusNewport already possessed the required funding and would have rejected its offer had he not."  Pls' Memo. at 6.  Further, Plaintiffs allege that had they

known that ColumbusNewport lacked the necessary funding, Excedo "would have been motivated

to move on with another investor."

Distilled to its essence, Plaintiffs allege that they were harmed by the Defendants'

fraudulent, negligent, and promissory misrepresentations and/or omissions made to them in the

course of the parties' negotiations. Specifically, Plaintiffs Excedo and Caracciolo allege they have

suffered the following injuries:

> (1) the costs and expenses associated with the failed transaction, (2) the loss to
> Excedo of the terms set forth in the Letter of Intent and other equity investment
> options previously available to Excedo, (3) the financial and professional losses of
> Caracciolo, and (4) the loss of business opportunities previously available to Excedo
> that it was unable to pursue due to the failure of its acquisition of the Business Units.

Complaint, at ¶ 87.

Plaintiff Thorp Reed was to be compensated for its legal services performed on behalf of

Plaintiffs upon the closing of the Excedo/ ColumbusNewport transaction.  Thorp Reed alleges that

it "relied upon the Defendants' representations concerning ColumbusNewport's current possession

of the necessary funding and, as a result of that reliance, performed the necessary due diligence and

provided other legal services." *Id.* at ¶ 88.   As a result, Thorp Reed alleges that it "has been

damaged by its reliance on the Defendants' misrepresentations because it has not been compensated

for the services it performed in the course of the contemplated transaction." *Id.*

Plaintiffs argue that summary judgment is not appropriate because at a minimum "[t]he law

and facts of this case show that Plaintiffs' claims against the ColumbusNewport Defendants should

be submitted to a jury." Memo. at 8.  The Court agrees.

**STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to go beyond the mere pleadings and present evidence through affidavits, depositions, or admissions on file to show that there is a genuine issue for trial. *Id.* at 324. A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the nonmovant. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied ,* 507 U.S. 912 (1993). Moreover, a court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment, even if the quantity of the moving party's evidence far outweighs that of its opponent. *Id.* Nonetheless, a party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements. *Trap Rock Indus., Inc. v. Local 825,* 982 F.2d 884, 890 (3d Cir. 1992).

**DISCUSSION**

A.    It Is A Question for the Jury Whether Defendants Millar and Lawrence Should Be Held
      Individually Liable

Generally, a corporate officer cannot be held individually liable for acts taken on behalf of a

corporation.  However, "corporate officers and directors are liable for the tortious acts the

corporation commits under their direction or with their participation." *McMullen v. European*

*Adoption Consultants, Inc.,* 129 F. Supp. 805, 812 (W.D. Pa. 2001).

The ColumbusNewport Defendants argue that Plaintiffs cannot demonstrate "by clear and

convincing evidence that Messrs. Millar and Lawrence falsely represented that ColumbusNewport

had the $15 million when in fact they had no intention of funding the transaction."  Defs' Br. at 11.

Not surprisingly, Plaintiffs respond that "the evidence of Defendants' liability is more than

sufficient to support the submission of the case to a jury."  Defs' Memo. at 11.

In support of their position, Plaintiffs contend that Defendant Millar was personally involved

in the preparation and proposal of the September and December letters of intent.  During his

deposition, Millar testified that he was provided a courtesy copy of the December letter of intent "to

see if I had any input" and that he reviewed the documents with Defendant Lawrence before they

were presented to Caracciolo. Moreover, Defendant Lawrence testified during his deposition that he

specifically discussed the removal of the funding contingency from the December proposal with

Millar.

Further, Arthur Cherry of Federated had discussions with Millar, both prior to the execution

of the December letter of intent and during the preparation of the transaction for closing in which,

according to Arthur Cherry, Millar led him to believe that ColumbusNewport possessed the

necessary funding for the transaction.

As to Defendant Lawrence, Plaintiffs contend that he "conducted a scheme - - by statement, conduct and omission - - that defrauded the Plaintiffs." Defs's Memo. at 11. For example, in June 2002, Defendant Lawrence stated that ColumbusNewport did not have funding for the transaction, but stated that ColumbusNewport was in the process of acquiring it. In December 2002, Defendant Lawrence faxed to Caracciolo a proposed letter of intent that omitted the funding contingency that was contained in the September 2002 proposal.

According to Plaintiffs, from December 10, 2002, through January 17, 2003, Defendant Lawrence never disclosed that ColumbusNewport lacked funding to consummate the Excedo investment. Finally, following the failure of the transaction to close on January 17, 2003, Lawrence continued to issue assurances to Caracciolo that ColumbusNewport would secure the necessary funding.

The Court finds and rules that it seems most appropriate to allow the claims brought against Defendants Millar and Lawrence to be submitted to the jury. There are genuine issues of material fact surrounding the representations and omissions allegedly made by Defendants Millar and Lawrence to Plaintiffs. Both sides point to facts to support their positions, making it impossible for this Court to determine as a matter of law that individual liability could not be imposed upon Defendants Millar and/or Lawrence. Accordingly, Defendants' request for summary judgment on this issue will be denied.

2.      It Is A Question For The Jury Whether Plaintiffs Justifiably Relied Upon Defendants'
        Alleged Misrepresentations and Omissions[1]

"Justifiable" or "reasonable" reliance is a critical element in each of the claims Plaintiffs

have brought against Defendants.

Under Pennsylvania law, to prove fraud a plaintiff must prove the following elements by

clear and convincing evidence: "(1) a misrepresentation; (2) a fraudulent utterance of it; (3) the

maker's intent that the recipient be induced thereby to act; (4) the recipient's justifiable reliance on

the misrepresentation ; and (5) damage to the recipient proximately caused." *Trans Penn Wax

Corp. v. McCandless,* 50 F.3d 217, 232 (3d Cir. 1995) (quoting *Seven v. Kelshaw,* 611 A.2d 1232,

1236 (Pa. Super. Ct. 1992) (emphasis added)).

The elements of negligent misrepresentation are: "(1) a misrepresentation of a material fact;

(2) the representor must either know of the misrepresentation, must make the misrepresentation

without knowledge as to its truth or falsity or must make the representation under circumstances in

which he ought to have known of its falsity; (3) the representor must intend the representation to

induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the

misrepresentation." *Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882, 890 (Pa. 1994) (emphasis added).

The elements for a cause of action for promissory estoppel are: (1) misleading words,

conduct or silence by the party against whom the estoppel is asserted; (2) unambiguous proof of

reasonable reliance on the misrepresentation by the party seeking to assert the estoppel; and (3) no

---

[1]     Defendants also contend that they are entitled to summary judgment because
        Plaintiffs cannot satisfy the elements of fraud or misrepresentation.  However, this
        argument is subsumed in the argument that Plaintiffs also cannot show "reasonable
        reliance," which argument is addressed at length in this section of the
        Memorandum Opinion.  Accordingly, the Court will deny the argument that
        Plaintiffs cannot satisfy the elements of fraud or misrepresentation without further
        discussion.

duty of inquiry on the party seeking to assert estoppel.  *See Kimberton Chase Realty Corp. v. Main Line Bank,* 1997 WL 698487 (E.D. Pa. 1997) (citing *Thomas v. E.B. Jermyn Lodge No. 2,* 693 A.2d 974, 977 (Pa. Super. Ct. 1997) (emphasis added).

The ColumbusNewport Defendants argue that Plaintiffs cannot demonstrate justifiable or reasonable reliance and, thus, they are entitled to summary judgment.  In response to Defendants' argument, Plaintiffs posit that "[t]he facts show that the Plaintiffs reasonably relied on the Defendants' false statements and omissions."  Pls' Memo. at 14.  Moreover, "[t]he question of justifiable reliance is most appropriately left to the jury.  Reasonableness of reliance involves all of the elements of the transaction, and is rarely susceptible to summary judgment."  *Williams Controls, Inc. v. Parent, Randolph, Orlando, Carey & Assoc.,* 39 F. Supp. 2d 517, 534 (M.D. Pa. 1999).

On the present record, the Court finds and rules that a genuine issue of material fact exists. A reasonable jury could conclude that the ColumbusNewport Defendants represented to Plaintiffs that they were successful in acquiring the funding and that the Plaintiffs  acted reasonably in relying upon the Defendants' representations.  Thus, Defendants' motion for summary judgment will be denied on this ground.


3.	Thorp Reed's Claim Does Not Fall Within the Purview of the American Rule

Finally, the ColumbusNewport Defendants argue that "Thorp Reed's claims for legal fees are invalid as a matter of law."  Plaintiffs did not directly respond to this argument, but rather argue that "Thorp Reed reasonably relied upon the Defendants' statements, [that] the ColumbusNewport Defendants were aware that Caracciolo was being advised by Thorp Reed prior to the issuance of their misrepresentations and omissions, and Thorp Reed has suffered harm in reliance upon the misrepresentations . . . ."  Pls' Memo. at 17.

The Complaint in this matter reflects that Thorp Reed "relied upon the Defendants' representations concerning ColumbusNewport's current possession of the necessary funding and, as a result of that reliance, performed the necessary due diligence and provided other legal services." *Id.* at 88.   As a result, Thorp Reed "has been damaged by its reliance on the Defendants' misrepresentations because it has not been compensated for the services it performed in the course of the contemplated transaction."   Complaint, at ¶ 88.

As the Supreme Court has made clear, in the absence of an agreement or statute providing for attorney's fees, the American Rule is that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247 (1975); *see also Pennsylvania v. Flaherty,* 40 F.3d 57, 60 (3d Cir. 1994) (plaintiff cannot recover attorneys' fees from the opposing party unless there is a statute or agreement between the parties that provides for the awarding of attorney's fees).   While Thorp Reed has alleged that it "has been damaged . . . because it has not been compensated for its services . . .," the Court does not interpret this to mean that Thorp Reed's claim falls within the purview of the American Rule and its exceptions.   Thorp Reed is not seeking the attorneys' fees it has incurred in prosecuting this claim.   Rather, the Court finds and rules that Thorp Reed's claim is an ordinary claim for damages.   *See Dutrisac v. Caterpillar Tractor Co.,* 749 F.2d 1270 (9th Cir. 1983);   *Bygott v. Leaseway Transp. Corp.*, 637 F. Supp. 1433 (E.D. Pa. 1986).   Accordingly, Defendants' motion will be denied on this issue.

## CONCLUSION

For the reasons discussed *supra,* the Motion for Summary Judgment filed by the ColumbusNewport Defendants will be denied.   An appropriate Order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EXCEDO INCORPORATED,<br>LAWRENCE CARACCIOLO, and<br>THORP REED & ARMSTRONG, LLP,<br><br>       Plaintiffs,<br><br>       v.<br><br>COLUMBUSNEWPORT, LLC; BLUE<br>RIDGE PARTNERS MANAGEMENT<br>CONSULTING, LLC; VICTOR MILLAR;<br>JOHN F. LAWRENCE; JAMES COREY; and<br>MICHAEL PENNEY,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)    02:  03cv1158<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER OF COURT**

AND NOW, this 31st day of March, 2006, in accordance with the foregoing Memorandum

Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that the Motion for Summary

Judgment filed by Defendants ColumbusNewport, LLC, Victor Millar, and John F. Lawrence

(*Document No. 70*) is **DENIED**.


                      BY THE COURT:

                      s/Terrence F. McVerry
                      United States District Court Judge

cc:   William M. Wycoff, Esquire
      Thorp Reed & Armstrong
      Email: wwycoff@thorpreed.com

      J. Alexander Hershey, Esquire
      Thorp Reed & Armstrong
      Email: ahershey@thorpreed.com

      Bradley S. Tupi, Esquire
      Tucker Arensberg
      Email: btupi@tuckerlaw.com

      Gary P. Hunt, Esquire
      Tucker Arensberg
      Email: ghunt@tuckerlaw.com

      Scott R. Leah , Esquire
      Tucker Arensberg
      Email: sleah@tuckerlaw.com

      Julian E. Neiser, Esquire
      McGuire Woods
      Email: jneiser@mcguirewoods.com

      Gordon W. Schmidt, Esquire
      McGuire Woods
      Email: gschmidt@mcguirewoods.com

      Kevin S. Batik, Esquire
      McGuire Woods
      Email: kbatik@mcguirewoods.com