**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

EXCEDO INCORPORATED,            )
LAWRENCE CARACCIOLO, and        )
THORP REED & ARMSTRONG, LLP,    )
                                )
            Plaintiffs,          )
                                )
        v.                       )        02:  03cv1158
                                )
COLUMBUSNEWPORT, LLC; BLUE      )
RIDGE PARTNERS MANAGEMENT       )
CONSULTING, LLC; VICTOR MILLAR;  )
JOHN F. LAWRENCE; JAMES COREY; and )
MICHAEL PENNEY,                 )
                                )
            Defendants.          )

**MEMORANDUM OPINION AND ORDER OF COURT**

March 31, 2006

      Presently before the Court are the following:

      •     MOTION FOR SUMMARY JUDGMENT filed by Blue Ridge Management

Consulting, LLC, with brief in support (*Document Nos. 75 and 76, respectively*);

      •     OPPOSITION AND MEMORANDUM OF LAW IN OPPOSITION filed by

Plaintiffs, Excedo Incorporated, Lawrence Caracciolo, and Thorp, Reed & Armstrong LLP

(*Document Nos. 86 and 87, respectively*);

      •     REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

filed by Blue Ridge Management Consulting, LLC *(Document No. 100)*;

      •     MOTION FOR SUMMARY JUDGMENT filed by James Corey and Michael

Penney, with brief in support (*Document Nos. 77 and 78, respectively)*;

•       OPPOSITION and MEMORANDUM OF LAW IN OPPOSITION  filed by Plaintiffs, Excedo Incorporated, Lawrence Caracciolo, and Thorp, Reed & Armstrong LLP (*Document Nos. 88 and 89, respectively)*; and

•       REPLY BRIEF IN SUPPORT OF DEFENDANTS JAMES COREY AND MICHAEL PENNEY'S MOTION FOR SUMMARY JUDGMENT filed by James Corey and Michael Penney (*Document No. 101*).

After careful review of the filings of the parties and the relevant case law, the Motions for Summary Judgment will be denied in part and granted in part.

### PROCEDURAL BACKGROUND

On July 31, 2003, Plaintiffs, Excedo Incorporated ("Excedo"), Lawrence Caracciolo ("Caracciolo"), and Thorp Reed & Armstrong, LLP ("Thorp Reed"), filed a Verified Complaint in this Court in which they alleged claims of fraud, negligent misrepresentation, and promissory estoppel against Defendants ColumbusNewport, LLC ("ColumbusNewport"); Victor Millar ("Millar"), Chief Executive Officer of ColumbusNewport; and John F. Lawrence ("Lawrence"), Chief Financial Officer of ColumbusNewport; Blue Ridge Partners Management Consulting, LLC ("Blue Ridge"); and the two principals of Blue Ridge, James Corey ("Corey") and Michael Penney ("Penney") (collectively referred to as the "Blue Ridge Defendants").

Specifically, Plaintiffs allege that Blue Ridge "breached its obligations and misled Excedo to intentionally conceal that breach," and that Corey and Penney "made false affirmative statements and omitted information within their knowledge concerning ColumbusNewport's financial position that, taken separately and collectively, support the

2

Plaintiffs' claims of fraud, negligent misrepresentation, and promissory estoppel."  Pls' Opp'n at ¶ 4.

Defendants Blue Ridge, Corey, and Penney have filed motions for summary judgment, in which they contend that all claims against them should be dismissed.  Plaintiffs have filed their responses and memoranda in opposition to the motions for summary judgment. The issues will be addressed seriatim.


### FACTUAL BACKGROUND

The facts relevant to this discussion, and viewed in the light most favorable to Plaintiffs, are as follows.  In 2002 and 2003, Plaintiffs Caracciolo and Excedo sought to acquire two subsidiaries of Federated Investors, Inc. ("Federated") (collectively referred to as the "Business Units"), whose operations Caracciolo managed.  In May of 2002 Caracciolo was introduced to Defendants Corey and Penney, principals of Blue Ridge.  Soon thereafter, Excedo retained Blue Ridge as a consultant to assist in its effort to locate an equity investor to fund the acquisition.

The Plaintiffs and the Blue Ridge Defendants discussed the fact that Blue Ridge and its principals lacked the license and registration necessary to officially serve as a broker/ dealer. Accordingly, it was determined that Blue Ridge would associate with a licensed and registered broker /dealer for the Excedo transaction.  In this respect, Blue Ridge's performance of the Consulting Agreement was facilitated by two means: first, Defendant Penney undertook the necessary steps to become licensed; and second, through the execution by Excedo of a Placement Agreement with Valdes & Moreno, a licensed and registered broker /dealer, and the

execution by Penney of a Representative Agreement with Valdes & Moreno, Penney would be provided with a registered "shingle" for the transaction.

The parties' relationship was memorialized in a Consulting Agreement and a Letter Agreement, each dated October 30, 2002.  The Consulting Agreement, in relevant part, provides as follows:

> 1. <u>Consulting Services</u>.  During the term of this Agreement, Blue Ridge shall provide marketing, branding, and other general corporate advisory services to the Company in relation to the Company's private equity offering to qualified investors (the "*Consulting Services*").  Such Consulting Services shall be performed by the qualified officers, employees, representatives or agents of Blue Ridge, and Blue Ridge shall at all times direct, monitor and supervise the performance of such services by such officers, employees, representatives or agents.
>
> . . .
>
> 8. <u>Not Broker/Dealer, Security Underwriter or Placement Agent</u>.  The parties acknowledge and agree that Blue Ridge is not a broker/dealer, securities underwriter or a placement agent and that the consulting services to be provided under this agreement are not services that would constitute services as a broker/dealer under federal or state securities law.

Consulting Agreement, Exhibit 16.

The Letter Agreement provided that Excedo and Caracciolo would use reasonable efforts to grant Blue Ridge warrants in Excedo upon the completion of any equity offering "originated by Valdes & Moreno or Blue Ridge prior to April 1, 2003."

In relevant part, the Placement Agreement between Excedo and Valdes & Moreno provides:

> Section 2.  *Performance*.  The Placement Agent [Valdes & Moreno] shall use its commercially reasonable efforts, in a manner consistent with a private equity offering eligible for the exemption provided for in Rule 506 under the Securities Act of 1933, as amended (the "*Act*"), to:  (a) identify and promptly contact potential investors who possess sufficient financial resources to make an investment in Excedo and who are accredited investors as defined by Rule 501(a) under the Act (the *"Potential Investors"*); (b) provide information about Excedo to such Potential Investors (so long as such information consists of either the Offering

Materials (as defined below) or other materials which have been otherwise previously approved by Excedo for release to Potential Investors); (c) assist Excedo in negotiating with such Potential Investors on the terms of equity investments in Excedo; and (d) secure investments in Excedo for a minimum total equity investment in Excedo of $5,000,000 (collectively, the *"Offering"*).  Excedo shall have the exclusive right, in its sole discretion, to accept or deny the participation of any Potential Investor in the Offering.

Placement Agreement, Exhibit 85.

Over the summer and fall of 2002, Blue Ridge was not successful in locating appropriate equity investors for Excedo.  In each instance, the prospective investor either (a) found that Excedo did not meet its investment profile or was otherwise not interested in the transaction or (b) failed to offer terms that met Excedo's needs.  Throughout this time, Penney had repeatedly suggested ColumbusNewport as a potential source of funding.  In June of 2002, Caracciolo and Penney met with Defendant  Lawrence of ColumbusNewport.  In July of 2002, Penney told Caracciolo that ColumbusNewport was interested in the Excedo opportunity, but had not secured funding.

In the fall of 2002, Caracciolo expressed his concern and displeasure to the Blue Ridge Defendants with regard to their efforts and the delays the parties were facing because they had not produced an investor.  Caracciolo and Excedo also began to search independently for an equity investor capable of proceeding with the transaction.

On September 10, 2002, ColumbusNewport sent Caracciolo and Excedo a proposed Letter of Intent, which conditioned the closing of the transaction on a contingency that "[ColumbusNewport] shall have obtained financing in an amount, and upon terms, which allow it to consummate the purchase."   Caracciolo, after consulting with Thorp Reed, rejected the proposal because he would not sign a letter of intent with any investor who lacked the funding to close the ultimate transaction.

During the fall of 2002, Penney informed Caracciolo that ColumbusNewport was making progress in its effort to raise the funding.  Independently, Excedo developed a relationship with Insight Venture Management, LLC ("Insight"), a fully funded investor who was disclosed to all the Defendants and who presented and negotiated a letter of intent in late November 2002.

After learning of Insight, Penney informed Caracciolo that Blue Ridge had been retained by ColumbusNewport to complete its funding transactions and that in that capacity Penney was to travel to Europe.  In the last week of November, 2002, Penney spoke with Caracciolo from London and allegedly told him that ColumbusNewport was receiving its funding and that it had received enough to fund the Excedo transaction.   Penney, however, told Caracciolo that the terms of his retention by ColumbusNewport prevented him from providing the specifics of ColumbusNewport's acquisition of funding.  Plaintiffs allege that Penney made similar statements to John Gray, an employee of Federated who was to become part of Excedo's management team following the transaction.

Penney also indicated that ColumbusNewport would be presenting a revised letter of intent.  On December 2, 2002, Defendant Lawrence of ColumbusNewport faxed a revised Letter of Intent to Excedo that did not contain the funding contingency that had appeared in the September proposal.  The Letter of Intent contained an exclusivity provision, which forbade Excedo from negotiating with any other potential investors.  The exclusivity provision was set to expire on December 31, 2002.

During the first week of December, Plaintiffs compared the terms of the ColumbusNewport proposal with the terms contained in Insight's proposal.  Caracciolo "induced by representations of ColumbusNewport's funding," executed the Letter of Intent on

behalf of Excedo on December 10, 2002, and rejected the proposal made by Insight.  It was anticipated that the closing of the transaction would occur on or before December 31, 2002.

On December 30, 2002, ColumbusNewport advised Excedo that the closing would have to be postponed to allow time for Defendant Millar of ColumbusNewport to review the relevant documentation.  The closing was rescheduled for January 17, 2003.

On January 17, 2003, Plaintiffs were advised that ColumbusNewport lacked the necessary funding to close the transaction.

Plaintiffs contend that the Blue Ridge Defendants failed to disclose that ColumbusNewport lacked the necessary funding because it feared "losing the Excedo deal entirely."  For example, "[d]uring the letter of intent negotiations in early December, due to the availability of the Insight proposal, if the lack of funding had been disclosed ColumbusNewport would have lost the Excedo opportunity and Blue Ridge would have lost its warrants in Excedo under the Letter Agreement because it had not originated Insight."  Pls' Memo. at 8. "Similarly, as of December 31, the exclusivity provision of the ColumbusNewport Letter of Intent was set to expire and, had the Defendants disclosed the lack of funding, Excedo would have been motivated to move on with another investor."  *Id.*  Thus, according to Plaintiffs, the Blue Ridge Defendants continued to conceal the fact that ColumbusNewport was not a "qualified investor."

Blue Ridge argues that pursuant to the Consulting Agreement they had no contractual duty to find or locate qualified investors for Excedo and the failure to find such investors cannot support a claim for breach of contract.  Plaintiffs, not surprisingly, vigorously disagree.  Accordingly to Plaintiffs, throughout the failed transaction, it was clear that Blue Ridge was ultimately responsible to find a qualified investor for the deal.  "The affiliation of

Valdes & Moreno with the transaction was merely a method to involve a registered broker to aid Blue Ridge's performance of and compensation for the services it owed under the Consulting Agreement as Excedo's finder of qualified equity investors." Pls' Memo. at 11. Furthermore, the executed Letter Agreement specifically provided compensation to Blue Ridge for the origination of an equity investor. Plaintiffs also argue that the Consulting Agreement is ambiguous, and that "a jury, as the finder of fact, must examine the conduct and efforts of the parties to locate an equity investor and the course of their negotiation and execution of the contractual arrangements."

Defendants Corey and Penney argue that the Consulting Agreement between Blue Ridge and Excedo "clearly sets forth the obligations of Blue Ridge (and its representatives) and Excedo" and, therefore, summary judgment is appropriate on Plaintiffs' tort claims because Plaintiffs "sole avenue of relief is a breach of contract action . . . ." Defs' Corey and Penney Memo. at 2. Plaintiffs respond that their claims against Corey and Penney do not fall within the scope of the Consulting Agreement and summary judgment, therefore, is not appropriate.

### STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party

to go beyond the mere pleadings and present evidence through affidavits, depositions, or admissions on file to show that there is a genuine issue for trial. *Id.* at 324.  A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the nonmovant.  *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied ,* 507 U.S. 912 (1993).  Moreover, a court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment, even if the quantity of the moving party's evidence far outweighs that of its opponent.  *Id.*   Nonetheless, a party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements.  *Trap Rock Indus., Inc. v. Local 825,* 982 F.2d 884, 890 (3d Cir. 1992).

### DISCUSSION

A.      ***The Blue Ridge Motion for Summary Judgment***

1.      <u>Breach of Contract Claim</u>

Distilled to its essence, Blue Ridge's argument is that it performed the consulting services specified in the Consulting Agreement and is entitled to summary judgment because there is no evidence that Blue Ridge breached the duties set forth in that Agreement.  Plaintiffs reply that at all times the parties understood that Blue Ridge had the responsibility under the Consulting Agreement to assist Excedo in finding equity investors in the course of its "advisory services to the Company in relation to the Company's private equity offering."  Plaintiffs argue that Blue Ridge's own course of conduct clearly reflects that it was directly participating in

Excedo's search for equity funding and that it understood that its agreement with Excedo required these services.

For example, Caracciolo testified in his deposition that when he first met Corey and Penney in May 2002, they represented to him that Blue Ridge "enjoyed substantial contacts in the equity markets that would assist Excedo in finding the money necessary to carve out the Business Units."  Pls' Memo. at 10.

The summary judgment record also reflects that in June 2002, Blue Ridge proposed a draft Advisory Service Agreement to Excedo which provided that Blue Ridge was to "assist Caracciolo in developing, identifying, and evaluating financing opportunities with equity investors and lenders." *Id.*  However, the Advisory Service Agreement was not signed after Blue Ridge, Excedo, and their respective counsel discussed the fact that Blue Ridge and its principals lacked the license and registration necessary to officially serve as a broker/ dealer. Accordingly, the parties determined that Blue Ridge would associate with a licensed and registered broker for the Excedo transaction (i.e., Valdes & Moreno).

Also, Penney testified during his deposition that during the Summer of 2002 he continued to make efforts on behalf of Blue Ridge to locate equity investors and that he was involved in ColumbusNewport's September letter of intent.   Likewise, Corey testified that he continued to look for an equity investor on behalf of Blue Ridge and directly participated in Excedo's December 2002 negotiation and execution of the Letter of Intent with ColumbusNewport despite the fact that he was never licensed or affiliated with Valdes & Moreno.

Furthermore, the summary judgment record reflects that both Caracciolo and his counsel at Thorp Reed, Timothy Slavish, testified during their depositions that they believed

the Consulting Agreement required Blue Ridge to originate equity investors irrespective of the provisions of the Placement Agreement with Valdes & Moreno.

Lastly, the Letter Agreement executed by Blue Ridge and Excedo specifically provided compensation to Blue Ridge for the origination of an equity investor.  Caracciolo was to use "reasonable efforts to cause Excedo to grant a warrant to Blue Ridge immediately after the date of the completion of an equity offering in the event (i) Excedo (or any successor, assignee or affiliate of Excedo) receives new equity investments of not less than $5 million from investors (other than Federated Investors, Inc. and members of management) originated by Valdes & Moreno or Blue Ridge prior to April 1, 2001."  Pls' Memo. at 11 (emphasis added).

For these reasons, the Court finds and rules that on the summary judgment record before it at a minimum there is a factual dispute as to the services required under the Consulting Agreement and Letter Agreement which must be presented to the jury.  Accordingly, Blue Ridge's summary judgment motion on the breach of contract claim will be denied.

2.    Promissory Estoppel Claim

Blue Ridge argues that the existence of the Consulting Agreement bars all promissory estoppel claims against it.  However, as Plaintiffs correctly point out, only Plaintiff Excedo is a signatory to the Consulting Agreement.  Therefore, the Consulting Agreement between Blue Ridge and Excedo cannot bar the promissory estoppel claims against Blue Ridge of Plaintiffs Caracciolo and Thorp Reed .[1]

---

[1]    The Court notes that this ruling is in conformance with its prior ruling of April 14, 2005, wherein the Court agreed with the arguments of Blue Ridge and Penney and denied in part Plaintiffs' Motion to Dismiss the Counterclaims filed by Defendants Blue Ridge, Corey and Penney.  The Court found that no valid contract existed

(continued...)

However, the existence of the Consulting Agreement between Blue Ridge and Excedo clearly bars the promissory estoppel claim brought by Excedo against Blue Ridge. Accordingly, summary judgment will be granted on this claim.

B.       ***The Corey and Penney Motion for Summary Judgment***

        1.       The Gist of the Action Doctrine

            Corey and Penney argue that the gist of the action doctrine bars the fraud and negligent misrepresentation claims asserted against them.  Plaintiffs respond that these claims "do not fall within the scope of the gist of the action doctrine.  The tort law of Pennsylvania and the Third Circuit hold that individuals should be held liable for their misrepresentations."  Pls' Br. at 5.

        In support of their position, Corey and Penney rely upon a non-precedential opinion issued by the Court of Appeals for the Third Circuit which addressed the issue of whether the gist of the action doctrine bars claims against an individual acting as a corporate agent, but who has not signed the contract at issue:

> Finally, we hold that the District Court did not err in concluding that the [gist of the action] doctrine barred Williams' claims against Ross, as well as his claims against Ladbrokes.  Although Williams did not have a contractual relationship with Ross, Williams cannot detach Ross from his status as an agent for Ladbrokes.  Ross served as the principle negotiator for Ladbrokes.  As the Pennsylvania courts have spelled out, the gist of the action doctrine bars tort claims against an individual defendant where the contract between the plaintiff and the officer's company created the duties that the individual allegedly breached.

---

[1](...continued)
between Penney and either Excedo or Caracciolo and, therefore, denied the motion to dismiss the promissory estoppel claims brought by Penney against Excedo and Caracciolo.

*Williams v. Hilton Group PLC,* 93 Fed. Appx. 384, 387 (3d Cir., Mar. 17, 2004).[2]

Several Pennsylvania courts have likewise dismissed tort claims asserted against a corporate agent based on the existence of a contract between the plaintiff and the agent's employer. *See e.g., eToll, Inc. v. Elias/ Savion Advertising, Inc.*, 911 A.2d 10 (Pa. Super 2002) (relying on the gist of the action doctrine to dismiss tort claims against both the corporation and its agents); *Atchison Casting Corp. v. Deloitte & Touche*, LLP, 2003 WL 1847665 (Pa. Com. Pl. 2003) ( citing *eToll* and relying on the gist of the action doctrine to dismiss tort claims against both the corporation and its employees); *The Flynn Company v. Peerless Door & Glass, Inc*., 2002 WL 1018937 (Pa. Com. Pl. 2002) (dismissing tort claims against Peerless employee on the basis of the gist of the action doctrine upon finding that the contract between Flynn and Peerless created the duties that the employee allegedly breached).

In support of their position, Plaintiffs argue that the gist of the action doctrine "cannot be applied to a party that is not privy to the contract.  This follows from the requirement under Pennsylvania law that a valid breach of contract claim requires privity - - that there is a 'valid and binding contract to which the plaintiff and defendant were parties." *Penn City Investments, Inc. v. Soltech, Inc*., 2003 WL 2284420 at *3 and n.3 ("*Penn City I*"). Thus, according to Plaintiffs, the gist of the action doctrine cannot apply to the fraud and misrepresentation claims asserted by Plaintiffs against Corey and Penney because none of the Plaintiffs are in privity of contract with either of these Defendants.

Additionally, Plaintiffs rely on § 348 of the Restatement (Second) of Agency for the proposition that an agent may be held liable for fraudulent inducement even when he acts in

---

[2]     The appellate decision in *Williams* is unpublished and, thus, is not regarded as binding authority. *See* Internal Operating Procedures of the United States Court of Appeals for the Third Circuit § 5.3 (2002).

furtherance of his principal's interest, and cites several cases in support of this proposition.[3] *See*

*Donsco Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978) ("[a] corporate officer is

individually liable for the torts he personally commits and cannot shield himself behind a

corporation when he is an actual participant in the tort . . . . The fact that an officer is acting for

a corporation also may make the corporation vicariously or secondarily liable under the

doctrine of respondent superior; it does not however relieve the individual of his

responsibility."); *Penn City Investments, Inc. v. Soltech*, 2003 WL 23162410 (E.D. Pa. Dec. 4,

2003) ("Penn City II") (finding that an individual may be liable at tort for misrepresentations

made in the course of his employment despite the presence of a contract with his employer);

*McMullen v. European Adoption Consultants, Inc.*, 129 F. Supp. 2d 805, 812 (W.D. Pa. 2001)

(same); *United States v. Omega Institute, Inc.,* 11 F. Supp. 2d 555, 563-64 (D.N.J. 1998)

(same); *Weintraub Bros. Co. v. Attraction House Co.*, 1995 WL 365450 (E.D. Pa. Jun. 13,

1995) (relying upon section 348, district court denies summary judgment to an individual agent

finding that the agent remains liable for fraudulent statements made in furtherance of the

agent's interests); *see also Wicks v. Milzoco Bldrs.*, 470 A.2d 86, 89 n. 5 (Pa. 1983) (citing

*Donsco* ).[4]

---

[3]     The Court notes that in *Williams,* our appellate court did not address individual
liability under § 348 of Restatement (Second) of Agency.

[4]     In *Wicks v. Milzoco Builders, Inc.,* the Pennsylvania Supreme Court set forth the
following standard for assessing the liability of a corporate officer:
"Pennsylvania law recognizes the participation theory as a basis for tort liability.
The general, if not universal, rule is that an officer of a corporation who takes part
in the commission of a tort by the corporation is personally liable therefor; but that
an officer of a corporation who takes no part in the commission of the tort
committed by the corporation is not personally liable to third persons for such a
tort, nor for the acts of other agents, officers or employees of the corporation in
committing it, unless he specifically directed the particular act to be done or
(continued...)

Section 348 of the Restatement (Second) of Agency holds an agent liable for his fraudulent conduct, even if such fraud occurred in a transaction carried out on behalf of his principal:

> An agent who fraudulently makes representations, uses duress, or knowingly assists in the commission of tortious fraud or duress by his principal or by others is subject to liability in tort to the injured person although the fraud or duress occurs in a transaction on behalf of the principal.

Restatement (Second) of Agency § 348.  It is noteworthy that Plaintiffs are not contending that the alleged misrepresentations and omissions of  Defendants Corey and Penney induced Plaintiffs into entering the Consulting Agreement  between Blue Ridge and Excedo, but rather Plaintiffs allege that the fraudulent representations and omissions of Defendants Corey and Penney induced all the Plaintiffs into continuing to deal with ColumbusNewport, which is not a signatory to the Consulting Agreement.  The Court has not found any cases applying Pennsylvania law with similar facts.

Defendants Corey and Penney respond that Section 348 and the gist of the action doctrine are not mutually exclusive.  Rather, "Section 348 can be read to impose liability on an agent in certain circumstances for actions taken on behalf of the principal, while the gist of the action doctrine remains an exception to this rule, where, as here, there is a contractual relationship between the plaintiff and the corporate principal."  Reply Br. at 2-3.

---

[4](...continued)
participated, or cooperated therein."  The Court further stated that under the participation theory, a corporate officer is liable for "misfeasance", i.e., the improper performance of an act, but not "mere nonfeasance", i.e., the omission of an act which a person ought to do.

At this juncture, the Court is not willing to conclude that such a bright line exists. As Plaintiffs point out, numerous courts have imposed individual liability where a contractual relationship existed between the plaintiff and the corporate principal.  Therefore, in view of the clear language of Section 348, the Court cannot at this time grant summary judgment to Defendants Corey and Penney.

### 2..   Fraud and Negligent Misrepresentation Claims

Next, Defendants Corey and Penney argue that the claims for fraud and misrepresentation brought against them are legally insufficient and, therefore, summary judgment should be granted.   However, Plaintiffs have pointed to sufficient record evidence to survive summary judgment.  Plaintiffs allege that the misrepresentations and omissions of Defendants Corey and Penney evolved through a pattern of deception that misled the Plaintiffs. For example, the summary judgment record reflects that testimony from the Plaintiffs and employees of Federated will demonstrate that Plaintiffs were misled into believing that ColumbusNewport had the necessary funding for the Excedo investment.

The Court finds and rules that a reasonable jury could conclude that Defendants Corey and Penney engaged in a pattern of deception and that Plaintiffs acted reasonably in relying upon the Defendants' statements.  Thus, Defendants' motion for summary judgment on the fraud and negligent misrepresentations claims will be denied.

### 3.   Individual Liability for Plaintiffs' Promissory Estoppel Claim

Lastly, Defendants Corey and Penney argue that there is no individual liability for promissory estoppel when the alleged promises were made by the individual in his capacity as a

representative of a corporation.  "Promissory estoppel is an equitable remedy to be implemented only when there is no contract." *Iverson Baking Co. v. Weston Foods, Ltd.,* 874 F. Supp. 96, 102 (E.D. Pa.1995).  Promissory estoppel is "invoked in situations where the formal requirements of contract formation have not been satisfied and where justice would be served by enforcing a promise." *Carlson v. Arnot-Ogden Memorial Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990).

Corey and Penney argue that because "[a] corporation or limited liability company can act only through its agents, officers and representatives, . . . a corporate agent cannot be held personally liable for a contract executed in his corporate capacity. . . There is no principled reason for treating a claim for promissory estoppel any different than a claim for breach of contract."  Defs' Br. at 8.

However, the law in Pennsylvania is clear that a corporate officer is liable for the breach of any promises or representations which he extends not in his capacity as an officer but personally in his individual capacity. *The Village at Camelback Property Owners Ass'n v. Carr*, 538 A.2d 528, 534 (Pa. Super. 1988).   Moreover, if a corporate officer is also a shareholder in the corporation, in appropriate circumstances, he may be held individually liable under the equitable doctrine of piercing the corporate veil. *Id.,* at 532-33.

Corey and Penney argue that at all times relevant to this litigation they were acting in their capacities as representatives of Blue Ridge or Valdes & Moreno.  In response, Plaintiffs argue, *inter alia,* that Corey and Penney spoke falsely and incompletely about material issues, and that Corey and Penney owed a "heightened duty" to the Plaintiffs.  However, Plaintiffs never argue that Corey or Penney made promises or misled them while acting in their

<u>individual capacities</u>.   Accordingly, the Court will grant summary judgment in favor of Corey and Penney on Plaintiffs' promissory estoppel claims.

### CONCLUSION

For the reasons discussed *supra,* the Motions for Summary Judgment filed by the Defendants Blue Ridge Partners Management Consulting, LLC, James Corey, and Michael Penney will each be denied in part and granted in part.  An appropriate Order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

EXCEDO INCORPORATED,                    )
LAWRENCE CARACCIOLO, and                )
THORP REED & ARMSTRONG, LLP,            )
                                        )
            Plaintiffs,                 )
                                        )
    v.                                  )        02:  03cv1158
                                        )
COLUMBUSNEWPORT, LLC; BLUE              )
RIDGE PARTNERS MANAGEMENT               )
CONSULTING, LLC; VICTOR MILLAR;         )
JOHN F. LAWRENCE; JAMES COREY; and      )
MICHAEL PENNEY,                         )
                                        )
            Defendants.                 )

**ORDER OF COURT**

AND NOW, this 31st day of March, 2006, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

1.      The Motion for Summary Judgment filed by Blue Ridge Partners

Management Consulting, LLC (Document No. 75) is **GRANTED IN PART AND DENIED**

**IN PART** as follows:

    a.      The existence of the Consulting Agreement between Blue Ridge and Excedo

            bars the promissory estoppel claim brought by Excedo against Blue Ridge.

            Accordingly, summary judgment is GRANTED on this claim;

    b.      In all other respects, the Motion for Summary Judgment is DENIED;

2.      The  Motion for Summary Judgment filed by Defendants James Corey and

Michael Penney (*Document No. 77*) is **GRANTED IN PART AND DENIED IN PART** as

follows:

a.      The Motion for Summary Judgment is GRANTED as to Plaintiffs'

promissory estoppel claims brought against Corey and Penney;

b.      In all other respects, the Motion for Summary Judgment is DENIED.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:        William M. Wycoff, Esquire
Thorp Reed & Armstrong
Email: wwycoff@thorpreed.com

J. Alexander Hershey, Esquire
Thorp Reed & Armstrong
Email: ahershey@thorpreed.com

Bradley S. Tupi, Esquire
Tucker Arensberg
Email: btupi@tuckerlaw.com

Gary P. Hunt, Esquire
Tucker Arensberg
Email: ghunt@tuckerlaw.com

Scott R. Leah , Esquire
Tucker Arensberg
Email: sleah@tuckerlaw.com

Julian E. Neiser, Esquire
McGuire Woods
Email: jneiser@mcguirewoods.com

Gordon W. Schmidt, Esquire
McGuire Woods
Email: gschmidt@mcguirewoods.com

Kevin S. Batik, Esquire
McGuire Woods
Email: kbatik@mcguirewoods.com